UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MICHAEL MOTISE,                     :

                    Plaintiff,      :    REPORT AND RECOMMENDATION

          - against -               :    04 Civ. 2863 (SCR) (MDF)

MOHAMMED MIRZA and HELEN RUBIC,     :

                    Defendants.     :
------------------------------------X

TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

Defendant Mirza has moved to dismiss Plaintiff's second amended complaint (doc. #19), which sets forth one federal claim premised on 18 U.S.C. §2520(a) and three claims premised on Pennsylvania common law. Defendant correctly points out that §2520(a) is an enabling statute. In pertinent part it provides, "....any person whose wire, oral or electronic communication is intercepted, disclosed or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate." The terms intercepted, disclosed or intentionally used refer directly to the subsections of 18 U.S.C. §2511 subd. 1 and the relevant corresponding definitions in 18 U.S.C. §2510.

The Court of Appeals for the Second Circuit has set forth the statutory requirements for Plaintiff's federal claim as follows:

> Title III [of the Omnibus Crime Control and Safe Streets Act of 1968 as amended] provides, <u>inter alia</u>, both civil and criminal penalties for any person who intentionally (i) "intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept" any oral communication; (ii) uses an "electronic,

mechanical, or other device" to do so; (iii) discloses or endeavors to disclose the contents of such intercepted communication to any other person; or (iv) uses or endeavors to use the contents of such intercepted communications. 18 U.S.C. §2511(1)(a)-(d) (1994 & Supp. 1999(; see id §§2520(a, 2511(4). "Intercept" is defined under Title III as the "aural" or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device." Id. §2510(4). Further, "electronic, mechanical or other device" is defined as:

> any device or apparatus which can be used to intercept a wire, oral or electronic communication....

Id.2510(5)....

Arias v. Mutual Central Alarm Service, Inc., 202 F.3d 553, 556-557 (2d Cir. 2000). Eavesdropping or listening, in and of itself, is not unlawful. See Dorris v. Absher, 179 F.3d 420, 426 (6th Cir. 1999).

The relevant time frame for the federal claim is from at least January 15, 2002 to May 15, 2002, during which time illegal acts of eavesdropping occurred at one of Plaintiff's then residences, a second floor apartment on Sabine Avenue in Narberth, Pennsylvania. The disclosures of the eavesdropping occurred through the use of an internet listserve, also referred to as an e-mail exploder. Plaintiff's other residence at the time was an apartment located on 92nd Street in Elmhurst in Queens. Defendant Rubic, since dismissed from the case voluntarily by Plaintiff, also lived at an address on 92nd Street in Elmhurst Queens. Defendant Mirza worked at the Pathology Department of St. Vincent's Hospital and at Impath Pathology, Inc., both of which are located in Manhattan.

After an introduction, ¶11 of the pleading sets forth what

2

Plaintiff refers to as evidence of the eavesdropping and list serve posting. In October 2002 Helen Rubic, referred to as Plaintiff's "companion at that time", admitted that she knew that an email listservice was accepting and posting deprecating information concerning Plaintiff. The specifics of the deprecating information have not been alleged.

On January 28, 2003 Rubic suggested that Francis Kelly, a magistrate in the Traffic Court in the City of Philadelphia, had contributed an email message to the list serve concerning Plaintiff's visit to the court that day. Plaintiff does not elaborate on the substance of the message except to state that the purpose of the visit to the court was automobile insurance verification.

Plaintiff next refers to three (3) photographs, attached as exhibits A, B and C to the complaint, and observes that individuals with access to the listserve may send replies to the information posted there and may place titles on the messages they send there. According to Plaintiff the photograph in Exh. A depicts a building in Brooklyn, New York visible while traveling south on Interstate 278. During an unspecified year when Plaintiff was in medical school at Drexel University in Philadelphia, he drove the route nearly every weekend to visit his then companion Rubic in New York. The photograph, Exh. A, depicts the letters "JR" in the style of graffiti on a building. The letters are not plainly visible on Exh. B. JR is the title used on an e-mail sent by Louis Perretta, known only to his

family as "JR", over the list serve.  The e-mail questioned the
sexual orientation of his brother, Joseph Perretta, who is
identified as Plaintiff's stepfather.  From the end of January
2002 forward, communications between Plaintiff and Joseph Peretta
became less cordial and more hostile.  By the end of February
2002 Plaintiff had visited a hospital emergency room for
treatment for an infection in his eyelid.  He was treated by a
medical student, who, in an email entitled "ER" attempted to cast
doubts on Plaintiff's sexual orientation by writing disparaging
comments about Plaintiff's visit to the emergency room.  The
photograph in Exh. C depicts the side of a residential building
located at 92nd Street and 50th Avenue in Elmhurst Queens, about
four blocks from Rubic's residence.  The letters "ER" in large
graffiti form appear on the side of the building along with a
heart.  Other graffiti appears on either side of the letters, and
it is impossible to determine from the photograph, when, how or
in what order the various letters and other markings were placed
on the brick sidewall of the residential structure, except that
none of the markings is above the first floor.

   During the relevant period of time Plaintiff alleges that he
and Rubic communicated primarily by facsimile transmission
because he was concerned that "his conversations at his residence
in Narberth, Pa. and his phone conversations were somehow being
eavesdropped upon."  Compl. at 5 ¶12.  Plaintiff has attached as
Exh. D to the complaint records of communications with Helen
Rubic by facsimile transmission and alleges that this list proves

4

that Rubic had knowledge of the listserve.

Plaintiff next turns to a more specific allegation, which for the first time, mentions defendant Mirza, the movant. From the records of a fax machine alleged to have been in Rubic's possession in April and May 2002, Plaintiff cites two specific instances in which Rubic received faxes from his unlisted number. Plaintiff indicates that he faxed two letters to Rubic at a time when they were not continuing a socially close relationship. According to Plaintiff, the records indicate that Rubic faxed two pages to Mirza the next morning after the night when Plaintiff had faxed his letters to Rubic.

Plaintiff then alleges that depositions of Rubic and Mirza and analysis of their telephone records will demonstrate that Mirza was illegally disclosing eavesdropped information by faxing transcripts of eavesdropped information gained from Plaintiff's Pennsylvania apartment to Rubic at her home telephone number or by speaking with her by telephone. The specific allegation in ¶14 may have an ambiguous modifier or antecedent because Plaintiff alleges that information was "gained from his email account." but does not state whether the email account was Plaintiff's or Mirza's. Plaintiff's proof of the transmission is an allegation that Rubic gained knowledge of conversations that had occurred in his Pennsylvania residence when she was at her home in Elmhurst Queens and did not have access to a computer there. Plaintiff adds that Mirza also revealed transcripts of eavesdropped information to Rubic by opening his email account on

5

a computer located in Impath's pathology department while both he and Rubic were working there.

Following these allegations, Plaintiff has numbered headings of counts or causes of action. The substance of the first incorporates the preceding allegations and then states the substance of the federal claim against Mirza in ¶16 as follows:

> 16. The conduct of Mohammed Mirza, of faxing transcripts of eavesdropping and/or verbally notifying Helen Rubic of eavesdropping via telephone and/or opening his email account, while both were working at Impath Inc. and informing Ms. Rubic of specifics of eavesdropping, which included conversations and actions, illegally obtained from the residence 24 Sabine Avenue, Second Floor, Narberth, Pa., constitutes unlawful disclosures of communications by a nongovernmental defendant.

Rule 8(a)(2), which applies to pleadings submitted by pro se litigants, see Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512-514, 122 S.Ct. 992, 998-999 (2002), requires the pleader to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." In his opposition papers, Plaintiff indicates his compliance with this standard by referring to ¶16 and by stating that Mirza opened an e-mail account that was disseminating illegally eavesdropped information and then disclosed that information to Rubic. Plaintiff adds that he understands that the statute only pertains to electronically eavesdropped communications. In a most revealing statement, however, Plaintiff concludes his opposition as follows:

> Plaintiff asserts that the telephone conversation eavesdropped upon were two-way conversations and <u>the only possibility conversations involving two people in different locales could be eavesdropped upon is if they were</u>

<u>intercepted by electronic means</u>.

Plaintiff's Opposition, etc. at 8 (emphasis added). And so the tail wags the proverbial dog, at least so it seems in Plaintiff's thinking, the bizarre nature of which is apparent from the substance of some of his allegations, <u>i.e.</u>, reference his having drawn a relationship between symbols or markings used in graffiti and the substance of his telephone conversations. "In theory, even seemingly bizarre factual allegations in the complaint must be accepted as true. 11 James WM. Moore et al., <u>Moore's Federal Pra[c]tice</u>, §56.30 (3d Ed. 2005). In practice, however, courts sometimes deem factual allegations in a complaint so outlandish that the court may disregard them. <u>Id.</u>" <u>Pappanikolaou v. New York City</u>, No. CV-01-865 (DGT) (E.D.N.Y. July 14, 2005) (2005 Westlaw 1661649 at *13 n. 5).

Nothing in ¶16 indicates that Mirza used an electronic device to intercept a communication. <u>See</u> <u>Searcy v. Microsoft Corp.</u>, No. 04 CV 5700C-10GR (M.D. Fla. May 4, 2005) (2005 Westlaw 1163114 at *1). Nowhere does Plaintiff allege how the electronic eavesdropping occurred. He does not attach a copy of an allegedly faxed transcript as an exhibit and does not actually allege that Mirza should have known from the substance or other content of the alleged transcript that he would be disclosing information that had been the subject of electronic eavesdropping.

Given Plaintiff's <u>pro se</u> status, the Court must not only draw inferences in his favor but must liberally construe his

7

allegations to determine if they state a claim. In the context of an allegation of unlawful wiretapping, while a <u>pro</u> <u>se</u> Plaintiff may not necessarily have to specify or identify which device was used or how it was used, the Court must be able to infer that a device was used to intercept a communication. In terms of evidence, however, in order to recover against Mirza on a theory of unlawful disclosure, Plaintiff is going to have to specify the device and how it was used to "intercept" his communication(s), <u>see</u> <u>In Re Pharmatrak, Inc.</u>, 329 F.3d 9, 18 (1st Cir. 2003); <u>United States v. Daccarett</u>, 6 F.3d 37, 54 (2d Cir. 1993), that Mirza knew or should have known that the disclosed information was the product of an illegal wiretap and that Mirza had sufficient knowledge of the facts and circumstances surrounding the interception that he knew or should have known that the interception was prohibited. <u>Wiliams v. Poulos</u>, 11 F.3d 271, 284 (1st Cir. 1993) (citing cases). Although I have found no authority precisely on point and do not foreclose the possibility, I very much doubt that Mirza may be found liable for disclosing information obtained through unlawful electronic interception merely because he should have known from the content of the information he disclosed that it had been part of unlawful electronic interception.

Mirza also asks for dismissal because Plaintiff has not alleged facts which give rise to venue in this district. Under 28 U.S.C. §1391(b)(2), venue is proper in a judicial district in which a substantial part of the events giving rise to the claim

8

occurred.  As is patently apparent from ¶16 of the current pleading and other allegations, the alleged disclosure occurred while Mirza was at his employer, which is located in Manhattan in the Southern District of New York.  Accordingly, venue is proper in this district.

Finally, in his reply papers, Mirza cites the deposition of former defendant Helen Rubic, copy attached to a previously submitted letter, in which she categorically denies that she has had any contact with Mirza in 2002 or for that matter from the 1990's to 2004.  Apparently, she had some contact with him as a result of service of the amended complaint in 2004.  Relying on Rubic's deposition testimony, Mirza contends that there is no merit to any allegation of publication of any information by Mirza to Rubic.  Without saying so, in effect, Mirza asks this Court to grant summary judgment in his favor without having first provided the required advice of warning concerning summary judgment to a pro se Plaintiff.  Obviously, if Mirza wants to pursue a motion for summary judgment, he may do so on appropriate papers.  The ones that have been submitted are not appropriate papers.

Based on the foregoing, I respectfully recommend that your Honor deny Mirza's motion to dismiss.[1]

---

[1]This case no longer has any of the characteristics of a lawsuit in which a Plaintiff seeks to vindicate rights perceived to have been violated by a Defendant.  Plaintiff voluntarily discontinued this matter as to Rubic and then attempted to reinstate it without any appropriate showing.  I have already ruled on those applications on the record.  Plaintiff at least
(continued...)

NOTICE

Pursuant to 28 U.S.C. §636(b)(l), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (see Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned, at the said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge Robinson. See Thomas

---

[1](...continued)
had some sort of relationship with Rubic. Mirza's inclusion in this case, however, is almost beyond comprehension. Plaintiff does not allege any facts which indicate that he has ever had any relationship with Mirza. The claim bespeaks a motive other than preservation of the interests protected by 18 U.S.C. §2520.

Through the instant report and recommendation Plaintiff has been educated concerning his burden of proof with respect to a claim that has been pled marginally. All the circumstances indicate that the likelihood of success on that claim is nil. Perhaps Plaintiff may be suffering from an emotional or other impairment which has clouded his thinking or judgment concerning this matter. If he fails in his claim against Mirza, has Plaintiff considered that the record will almost certainly compel a finding that with respect to Mirza he abused the judicial process? Has Plaintiff considered the consequences of such a finding? Those consequences are an award of reasonable attorney's fees and costs.